IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER REID, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | |
| ) | Case No. 3:25-cv-237 |
| LEONARD ODDO, *Warden, Moshannon* ) | Judge Stephanie L. Haines |
| *Valley ICE Processing Center*, et al., ) | |
| ) | |
| Respondents. ) | |

## OPINION

On July 31, 2025, Petitioner Christopher Reid ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Habeas Petition") pursuant to 28 U.S.C § 2241 and the Suspension Clause of the United States Constitution. ECF No. 1. Petitioner named as Respondents: Leonard Oddo (in his official capacity as Warden of Moshannon Valley Processing Center), Brian McShane (in his official capacity as Acting Field Office Director of the Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") Philadelphia Field Office), Todd Lyons (in his official capacity as Acting Director of ICE), Kristi Noem (in her official capacity as Secretary of the Department of Homeland Security ("DHS")), DHS, and Pam Bondi (in her official capacity as Attorney General of the United States) (collectively, "Respondents").

On September 8, 2025, Petitioner filed a Motion for a Temporary Restraining Order ("T.R.O.") and Preliminary Injunction ("P.I.") alongside a Brief in Support. ECF Nos. 6, 7. Therein, Petitioner reiterates the claims he raised in his underlying Habeas Petition. Specifically, Petitioner alleges that Respondents have detained him for over one year at the Moshannon Valley Processing Center ("MVPC") while his removal proceedings take place and have not afforded him

a bond hearing;[1] Petitioner contends that his continued detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. ECF No. 1, p. 2 (citing *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020)); ECF No. 7, pp. 5–6, 12. In arguing that his ongoing detention absent a bond hearing has become unreasonable, Petitioner alleges that Respondents have violated self-imposed detention standards by: (1) placing a detainee with a high security classification in the same housing pod as Petitioner, who was given a medium or medium-high security classification and (2) failing to provide Petitioner with any documentation pertaining to the decision to place him in the Special Housing Unit ("SHU") in July 2025—where he has remained in solitary confinement after he began to be "single[d] out" and "threaten[ed]" by the high security detainee—or any of Respondents' reviews relative to his continued need for segregation. ECF No. 1, ¶¶ 20–24; ECF No. 7, pp. 7–8.[2]

---

[1] Petitioner notes that Respondents are detaining him pursuant to 8 U.S.C. § 1226(c). ECF No. 1, p. 2. As a result, Respondents argue that under § 1226(c), Petitioner is not entitled to a bond hearing but instead must remain detained during the pendency of his removal proceedings. ECF No. 9, p. 8. While Petitioner has raised the issue in his immigration proceedings whether his criminal convictions render him removable under § 1226(c)—raising that issue on appeal to the BIA, ECF No. 1, ¶ 19; ECF No. 7, p. 6—Petitioner has not raised that issue before this Court. As such, the analysis that follows focuses squarely on § 1226(c) and Petitioner's as applied challenge to his continued detention under the Due Process Clause.

[2] Petitioner's allegations that Respondents violated their own standards of detention appear to be bound up in the claim that his ongoing detention absent a bond hearing has become unreasonable, entitling him to either release or a constitutionally adequate bond hearing. *See* ECF No. 7, p. 10. Specifically, Petitioner raised allegations that Respondents violated detention standards as part of his underlying Habeas Petition, ECF No. 1, ¶¶ 20–26, wherein he raised only a single claim for relief based upon his continued detention without a bond hearing. *See* ECF No. 1, p. 9. In his Brief in Support of his Motion for a T.R.O. and P.I., Petitioner explained that "[o]n July 31, 2025, [Petitioner] filed a petition for a writ of habeas corpus in this Court because his detention with[out] a bond hearing has been unreasonably prolonged in violation of the Fifth Amendment of the U.S. Constitution[,]" ECF No. 7, p. 8; however, it was "[b]ecause [Petitioner] ha[d] been subjected to nearly two months of solitary confinement during his civil immigration proceedings, [that Petitioner] [] file[d] th[e] motion for a temporary restraining order… seeking either his immediate release from detention or an order requiring that a constitutionally adequate bond hearing be held[—the same relief requested in his underlying Habeas Petition.]" *Id.* ECF No. 1, pp. 14–15. Thus, Respondents' alleged violation of detention standards—that eventually led to Petitioner's solitary confinement—has always been intertwined with his due process claim rather than a separate claim altogether. *See* ECF No. 1, ¶ 35 (arguing that his continued detention without a bond hearing "is not meaningfully different than criminal incarceration as he is currently being subject to solitary confinement"); *cf. infra* Section II.B.iv; ECF No. 7, pp. 12–17 (relying solely upon Petitioner's solitary confinement—the result of Respondents' alleged failure to comply with detention standards—to allege irreparable harm in support of his Motion for a T.R.O. and P.I., which only addressed "the merits of his claim that his prolonged detention without a bond hearing violates the Due Process Clause."). Only in a single instance do Petitioner's allegations that Respondents violated their own standards of detention appear in the slightest to be separate

On September 9, 2025, this Court issued a Memorandum Order, wherein it denied Petitioner's Motion, ECF No. 6, "in so much as it requests relief via a [T.R.O.,]" and instead indicated that it would "proceed to consider the Motion in so much as it requests relief via a [P.I.]." ECF No. 8, p. 4. The Court then set a briefing schedule, received briefing from both parties, ECF Nos. 9, 10, directed supplemental briefing, and received supplemental briefing from both parties. ECF Nos. 11, 12.

On October 24, 2025, Respondents filed a Response to Petitioner's underlying Habeas Petition, ECF No. 13, and on October 30, 2025, Petitioner filed a Reply. ECF No. 14. Both Petitioner's Habeas Petition and his Motion at ECF No. 6 are fully briefed and ripe for disposition. Because the claim raised in Petitioner's Habeas Petition, ECF No. 1, is identical to the claim in his Motion at ECF No. 6, the Court will address both filings in one breath.

For the following reasons, the Court will GRANT Petitioner's Habeas Petition, ECF No. 1, in so much as it requests that this Court direct that he be afforded a constitutionally adequate bond hearing before an Immigration Judge and will DENY Petitioner's Habeas Petition, ECF No. 1, in all other respects. As such, this Court will DENY Petitioner's Motion at ECF No. 6 as moot.

I.      Facts

Petitioner was born in Jamaica and was brought to this country by his father when he was around six years old. ECF No. 1, ¶ 10, ECF No. 7, p. 4. After Petitioner's father abandoned him, a state court placed him in the custody of the Pennsylvania Department of Human Services[3] and

---

and distinct from his due process claim. *See* ECF No. 10, pp. 2–3. However, in that instance, Petitioner neither contends that this alleged violation would be sufficient, independent of his due process claim, to justify immediate release nor points the Court to authority setting forth the same. In light of this, and in light of the fact that this Court will be affording Petitioner the alternative relief he requests—a constitutionally adequate bond hearing before an Immigration Judge— any further review of these allegations, outside of the context of Petitioner's due process claim, would be rendered moot at this time.

[3] The Pennsylvania Department of Human Services eventually placed Petitioner in a foster home where he was "largely raised in the care of his foster mother[,]" Jacqueline Gardner. ECF No. 1, p. 5. While Petitioner's I-213 Form

3

allowed him to petition for Special Immigrant Juvenile ("SIJ") Status. ECF No. 1, ¶¶ 10–11, ECF No. 7, p. 4. Petitioner was granted SIJ Status, which then permitted him to apply for and adjust his status to that of a lawful permanent resident in November 2008. ECF No. 1, ¶ 11, ECF No. 7, p. 4.

Although Petitioner was lawfully in the country as a result of his lawful permanent resident status, he came to DHS's attention due to numerous criminal convictions. ECF No. 9-1, p. 7. From 2014 through 2023, Petitioner was arrested and convicted of multiple drug related offenses—including, "Manufacture, Delivery, or Possession with Intent to Deliver Marijuana in violation of 35 Pa.C.S. § 780-113(a)(30)"—in addition to a firearm offense— namely, "Possession of a firearm in violation of 18 Pa.C.S. § 6105(a)(1)." ECF No. 1, ¶ 12; ECF No. 7. ¶¶ 12–13. As a result, DHS commenced removal proceedings against Petitioner on September 23, 2024, when it issued a Notice to Appear, indicating that Petitioner was removable due to his criminal history. ECF No. 1, ¶ 12; ECF No. 9, p. 2. On that same day, DHS took Petitioner into custody and detained him at the MVPC where he has been held since. ECF No. 1, ¶ 12; ECF No. 7, p. 4.

Petitioner moved to terminate his removal proceedings, arguing "that his state law convictions were not a categorical match with the generic versions of the offenses referenced in the" Notice to Appear as grounds for removal, ECF No. 1, ¶ 13; ECF No. 7, p. 5, and that his convictions did not constitute removable offenses under 8 U.S.C. § 1227(a)(2), ECF No. 1, ¶ 12, which classifies "[a]ny alien . . . in and admitted to the United States" as removable "if the alien is within one or more. . . class[] of deportable aliens[.]" Relevant here, 8 U.S.C. § 1227(a)(2)(B) and (C) include within those classes of deportable aliens, individuals who have been convicted of "a violation of (or a conspiracy to attempt to violate) any law or regulation of a State, the United

---

indicates that he may have eventually been adopted by Ms. Gardner. ECF No. 9-1, p. 9 ("Therefore, due to [Petitioner] being over the age of 18 when he was adopted [by his foster mother] ...."), Petitioner consistently refers to her as his "foster mother." As such, the Court likewise refers to Ms. Gardner as Petitioner's "foster mother," notwithstanding the fact that she may also be his adoptive mother.

States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana[,]" § 1227(a)(2)(B)(i), and "[a]ny alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18)[.]" 8 U.S.C. § 1227(a)(2)(C). As to these issues, an Immigration Judge ruled on December 3, 2024, that Petitioner's "convictions for Possession with Intent to Deliver Marijuana constitute removable offenses under 8 U.S.C. § 1227(a)(2)(B)(i)[,]" but "reserved ruling on whether" Petitioner's firearm conviction was "a removable firearm offense under 8 U.S.C. § 1227(a)(2)(C)." ECF No. 1, ¶ 13; ECF No. 7, p. 5.

Subsequently, Petitioner "filed an application for Cancellation of Removal for Certain Permanent Residents." ECF No. 1, ¶ 14; ECF No. 7, p. 6. At the April 3, 2025, hearing on the matter, "DHS stipulated that [Petitioner] was statutorily eligible for Cancellation of Removal and that the sole issue to be resolved was whether [he] warranted a positive exercise of discretion." ECF No. 1, ¶ 16.[4] On May 27, 2025, the Immigration Judge issued a written decision, wherein he

---

[4] A lawful permanent resident, such as Petitioner, is statutorily eligible for Cancellation of Removal if he: "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of an aggravated felony." 8 U.S.C. § 1229b(a). As Petitioner appears to have satisfied those requirements, see ECF No. 1, ¶ 16, all that remained to be determined relative to his application for Cancellation of Removal was whether he "merit[ed] a favorable exercise of discretion." 8 U.S.C. § 1229a(c)(4)(A) ("An alien applying for relief or protection from removal has the burden of proof to establish that the alien--(i) satisfies the applicable eligibility requirements; *and (ii) with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion.*") (emphasis added).

5

denied Petitioner's application of Removal and ordered him removed to Jamaica. ECF No. 1, ¶ 18; ECF No. 7, p. 6; ECF No. 1-1, Exhibit D ("Exhibit D").[5]

In denying Petitioner's application for Cancellation of Removal, the Immigration Judge considered the testimony offered by Petitioner and his foster mother during the April 3rd hearing, as well as the record as a whole. *Id.* at p. 2. Specifically, the Immigration Judge cited to Petitioner's: (1) April 25, 2018, conviction of two felonies and a misdemeanor for "Possession with Intent to Sell Marijuana, Conspiracy to Commit the same, and Possession of Marijuana[;]" (2) August 18, 2015, guilty plea to "Possession with Intent to Deliver Marijuana[;]" (3) February 26, 2018, conviction for "possession of drug paraphernalia[;]" (4) November 16, 2018, guilty plea to "Possession with Intent to Deliver [marijuana;]" (5) June 3, 2022, arrest and eventual guilty plea to "Possession of a Firearm by a Prohibited Person[;]" and (6) Petitioner's "fail[ure] to express remorse, demonstrate rehabilitation, or take accountability for his most criminal conduct." *Id.* at pp. 4–5.[6] In this way, the Immigration Judge determined that a positive exercise of discretion was not warranted and that Petitioner's application for Cancellation of Removal should be denied. *See* Exhibit D.

---

[5] As part of this Order, the Immigration Judge incorporated the December 3, 2024, Order sustaining removability under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), due to Petitioner's drug convictions and noted, relative to Petitioner's firearm conviction, that DHS "did not meet its burden of proving removability under INA § 237(a)(2)[, 8 U.S.C. § 1227(a)(2)(C)]" as "DHS did not carry its burden of proving that [Petitioner]'s firearms conviction is [a] categorical match with the federal definition of firearm." Exhibit D, p. 1, n. 1. Thus, the Immigration Judge found that Petitioner is removable due to his drug convictions but not necessarily his firearm conviction.

[6] The Immigration Judge noted the following relative to his assessment of Petitioner's response when questioned about his drug offenses:

> Not once during his testimony did the [Petitioner] state that his repeated drug distribution activity was wrong or harmful to the community. In fact, the [Petitioner] appeared to imply the opposite: that he was doing his community service by selling marijuana in small amounts…the Court is troubled by the [Petitioner]'s characterization of his drug sale activity as the product of his likability and respect in the community.

Exhibit D, p.4. Relative to Petitioner's testimony regarding his possession of a firearm as a prohibited person, the Immigration Judge noted that Petitioner "claims that a friend was 'letting him hold it,' i.e., the firearm, because he [Petitioner] could not afford to *buy the gun* right away." *Id.* (emphasis added).

On June 8, 2025, Petitioner timely appealed both the Immigration Judge's decision to deny his Cancellation of Removal and the determination that he is removable under 8 U.S.C. § 1227(a)(2)(B)(i) to the Board of Immigration Appeals (the "BIA"). ECF No. 1, ¶ 19; ECF No. 7, p. 6. While the BIA did not issue a briefing schedule for months following Petitioner's appeal, ECF No. 1, ¶ 19; ECF No. 7, p. 6., it has since set a briefing deadline of November 10, 2025. ECF No. 15, p. 3; ECF No. 15-1; ECF No. 13, p. 7.

## II.  Due Process Claim Arising Out of Continued Detention

Petitioner contends that "his nearly one-year detention without a bond hearing has deprived him of liberty without due process under the Fifth Amendment of the United States Constitution." ECF No. 1, pp. 9–14, ¶¶ 28–48; ECF No. 7, p.12. In support of his due process claim, Petitioner: (1) notes the duration of his detention, now over 13 months; (2) cites the fact that he has an appeal pending before the BIA and indicates that he intends to file a Petition for Review with the Third Circuit should the BIA dismiss his appeal; (3) explains that he has not requested any continuance or delayed his removal proceedings through other means; and (4) contends that his detention is not meaningfully different than criminal custody due to his solitary confinement in the SHU. ECF No. 1, ¶¶ 32–37; ECF No. 7, pp. 12–14. As such, Petitioner requests that this Court Order his release or, alternatively, afford him a constitutionally adequate bond hearing. ECF No. 1, p. 15; ECF No. 6, p. 1.

Respondents maintain "that this Court cannot order [Petitioner]'s release or entertain any challenge to his mandatory detention status." ECF No. 9, p. 8; *see also* ECF No. 13, pp. 3–5. Respondents predicate this argument upon two bases: (1) "Section 1226(c) *mandates* detention for aliens convicted of certain crimes and does not explicitly contemplate bond hearings for those noncitizens[,]" ECF No. 9, p. 8 (emphasis in original); *see also* ECF No. 13, pp. 3–4, and (2) §

7

1226(e) precludes a district court from setting aside "any action or decision by the Attorney General…regarding the detention of any alien or the revocation or denial of bond or parole." ECF No. 9, p. 8; *see also* ECF No. 13, pp. 4–5. Regarding Petitioner's request for alternative relief in the form of a bond hearing, Respondents acknowledge that this Court "has the authority to order a bond hearing[,]" but they argue that "there is no reasonable basis to do so here[.]" ECF No. 9, p. 11; *see also* ECF No. 13, p. 5. Broadly, Respondents argue that the length of Petitioner's detention, the fact that "the government has not improperly delayed those proceedings, and [that] his detention at [MVPC] is distinguishable from criminal punishment" all indicate that Petitioner is not entitled to a bond hearing. ECF No. 9, p. 11; *see also* ECF No. 13, p. 5.

**A. Legal Standard**

The Court begins by analyzing the statutory provisions at issue.

"Under 8 U.S.C. § 1226(c), the Government must detain certain criminal aliens pending their removal proceedings, even if they were lawfully present in the United States." *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 206 (3d Cir. 2020). The mandatory detention provision in Section 1226(c) provides:

The Attorney General *shall take into custody* any alien who—

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year,
(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or
(E) (i) is inadmissible under paragraph 6(A), (6)(C), or (7) of section 1182(a) of this tile; and
(ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law

>>enforcement officer offense, or any crime that results in death or serious bodily injury to another person,
>
>when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (emphasis added). In addition to mandating that the Attorney General detain certain criminal aliens pending their removal proceedings, § 1226(c) also enumerates the specific and limited instances in which the Attorney General is permitted to release such individuals. Section 1226(c)(4) provides:

>The Attorney General may release an alien described in paragraph (1) *only if* the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c)(4) (emphasis added). Thus, "[b]y allowing aliens to be released 'only if' the Attorney General decides that certain conditions are met, that provision reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by statute" and "also unequivocally imposes an affirmative *prohibition* on releasing them under any other conditions." *Jennings v. Rodriguez*, 583 U.S. 281, 303–04 (2018).

In short, the statutory language of § 1226(c) is clearer than clear, *see Jennings*, 583 U.S. at 303, but "[w]ere there any doubt, the Supreme Court has observed… that §1226(c) requires the Government to 'detain an alien until a decision on *whether* the alien is to be removed is made,' and that it mandates that such noncitizens 'be detained without a bond hearing *until the question*

9

*of their removal is resolved.'" Gayle v. Warden Monmouth County Correctional Institution*, 12 F.4th 321, 330 (3d Cir. 2021) (quoting *Jennings*, 583 U.S. at 305); *Nielsen v. Preap*, 586 U.S. 392, 396 (2019) (emphasis provided)) (internal citations omitted). Still, the clear language of § 1226(c) does not authorize indefinite detention.

Although "§ 1226(c) does not on its face limit the length of the detention it authorizes… [it] is *not* 'silent' as to the [authorized] length of detention." *Id.* at 303–304. Because § 1226(c) "mandates detention 'pending a decision on whether the alien is to be removed from the United States[,]'" "detention under § 1226(c) has a 'definite termination point': the conclusion of removal proceedings." *Id.* at 304. "[T]hat 'definite termination point'—and not some arbitrary time limit devised by courts—marks the end of the Government's detention authority under § 1226(c)." *Id.* Thus, by its terms, 8 U.S.C. § 1226(c) requires that the Attorney General detain certain criminal aliens pending their removal proceedings unless certain conditions are met, and, at the same time, § 1226(c) establishes a definite termination point of that detention. Still, statutory interpretation, in and of itself, does not directly address due process concerns that arise out of mandatory detention absent a bond hearing. *See Jennings*, 583 U.S. at 312 (explaining that its decision addressed only statutory interpretation and left consideration of constitutional concerns arising out of the statute to courts of first review).

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Yet, the Supreme Court has "firmly and repeatedly endorsed the proposition that" "[i]n the broad exercise of its powers over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521–22 (collecting cases) (quoting *Matthews v. Diaz*, 426 U.S. 67, 79–80 (1976)) (internal quotation marks omitted). This is due to the fact that although

aliens are entitled to due process of law, *see Reno*, 507 U.S. at 306, "'[t]he due process afforded aliens stems from those statutory rights granted by Congress and the principle that '[m]inimum due process rights attach to statutory rights.'" *Osorio-Martinez v. Attorney General United States of America*, 893 F.3d 153, 172 (3d Cir. 2018) (quoting *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2009)). Yet, the Third Circuit has explained that acts of Congress which direct procedures without granting statutory rights to individuals, or classes of individuals, still implicate general notions of fairness, or due process. *See Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996) ("When Congress directs an agency to establish a procedure, however, it can be assumed that Congress intends that procedure to be a fair one.") (citing *Califano v. Yamaski*, 442 U.S. 682, 693 (1979)).

The Supreme Court has held that mandatory "[d]etention during removal proceedings is a constitutionally permissible part of that process[;]" *Demore*, 538 U.S. at 531, indeed, "deportation proceedings 'would be vain if those accused could not be held in custody pending the inquiry into their true character." *Id.* at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). In this way, the Supreme Court set forth that "the mandatory detention of a noncitizen does not [*on its face*] offend the Due Process Clause…so long as [the noncitizen] falls within the scope of § 1226(c) by 'reason of having committed any of the specified offenses." *Gayle*, 12 F.4th at 330 (quoting *Demore*, 538 U.S. at 527–28). Yet, "detention under § 1226(c) *may* violate due process if unreasonably long." *Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 279 (3d Cir. 2018) (emphasis added). As such, "aliens lawfully present can still bring *as-applied* challenges to their detention." *See German Santos*, 965 F.3d at 208–09 (emphasis added). The Third Circuit has explained this principal simply: "[W]hen detention becomes unreasonable, the Due Process Clause demands a bond hearing." *Id.* at 210 (quoting *Diop v. ICE/Homeland Security*, 656 F.3d 221, 233 (3d Cir. 2011)); *see also id.* at 209 ("[O]nce 'continued detention be[comes]

11

unreasonable or unjustified…a lawful permanent resident alien' could be 'entitled to an individualized determination as to his risk of flight and dangerousness.'") (quoting *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)).

"Reasonableness is a 'highly fact-specific' inquiry." *Id.* at 210 (quoting *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 474–75 (3d Cir. 2015)). As such, Courts in the Third Circuit are to apply "a nonexhaustive list of four factors…in assessing whether an alien's detention has grown unreasonable." *Id.* at 211. These four factors are: (1) duration of detention; (2) whether detention is likely to continue; (3) reasons for the delay; and (4) whether the alien's conditions of confinement are meaningfully different from criminal punishment. *Id.*

**B. Analysis**

**i. Duration of Detention**

When considering whether mandatory detention under § 1226(c) has become unreasonable, entitling the detainee to a bond determination hearing, "[t]he most important factor is the duration of detention." *German Santos*, 965 F.3d at 211. While there is no bright-line threshold of time that permits a court to presume that detention has crossed the line from reasonable, to unreasonable detention does become "'more and more suspect'" the longer it continues. *See id.* (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011)); *see also Gayle*, 12 F.4th at 332 ("If a noncitizen is found to fall within § 1226(c), she may not seek release on bond unless and until her detention has become 'unreasonably long,' which, under our precedents, *may be* six months or more.") (citing *German Santos*, 965 F.3d at 210–211) (emphasis added). Although the Supreme Court's decision in *Jennings* "foreclosed reading the statutory text as guaranteeing periodic bond hearings," *German Santos*, 965 F.3d at 210—an inquiry that begins and ends with the duration of detention—the operative, post *Jennings* framework applied in the

Third Circuit utilizes the duration of the detention to establish a base level of concern before evaluating it "along with all other circumstances[.]" *Id* at 211.

Here, Petitioner has been detained for over 13 months. *See* ECF No. 1, ¶ 12; ECF No. 7, p. 4 (Petitioner "was detained by ICE…on September 23, 2024.") (cleaned up). Even though Petitioner's detention is less than half the period—thirty (30) months—that triggered a bond hearing in *German Santos*, it is still longer than the "six-month-to-one-year period that triggered a bond hearing in *Chavez-Alvarez* [*v. Warden York County Prison*, 783 F.3d 469, 477 (3d Cir. 2015)]." *German Santos*, 965 F.3d at 212. When viewed in isolation, a detention of thirteen (13) months does not, on its face, appear unreasonable given the number of proceedings and applications that have been adjudicated during Petitioner's removal proceedings. *See supra* Section I. Simply put, this Court understands that proceedings and the rendering of decisions based upon those proceedings take time. Yet, when the duration of Petitioner's detention is viewed through the lens of the progress made towards the rendering of a final, binding decision—Petitioner's order of removal has not been rendered final nor has it been overturned—the duration of Petitioner's detention weighs in his favor.

### ii. Likelihood of Continued Detention

Here, Petitioner has appealed the Immigration Judge's denial of his Application for Cancellation of Removal and his determination that his drug convictions constitute removable offenses under § 1227(a)(2)(B)(i). ECF No. 1, ¶19. Although the BIA has set a briefing schedule, indicating that the appeal is on the track towards ultimate adjudication, *see* ECF No. 15, p. 3; ECF No. 15-1; ECF No. 13, p. 7, the BIA's decision may not be issued for months, and Petitioner will remain in detention during that period of time. *See German Santos*, 965 F.3d at 212 (noting the same reality if German Santos would have appealed the Immigration Judge's denial of his

application for cancelation of removal). Further, Petitioner has indicated that should the BIA dismiss his appeal, he will file a Petition for Review with the Third Circuit. ECF No. 1, ¶ 33; ECF No. 7, p. 13. "That too would add months more in [detention]. So the likelihood that his detention will continue strongly supports a finding of unreasonableness." *German Santos*, 965 F.3d at 212 (making the same assessment as this Court relative to the effect that German Santos' pending appeal with the BIA and indication that he might petition the Third Circuit for review had upon the likelihood of his continued detention); *see also White v. Warden Pike County Correctional Facility*, No. 23-2872, 2024 WL 4164269 at *2 (3d Cir. Sept. 12, 2024).

### iii. Reasons for Delay

In assessing the impact of the reasons for delay upon the reasonableness of detention pursuant to § 1226(c), a Petitioner's "appeals and applications for discretionary relief [are not held] against him[.]" *German Santos*, 965 F.3d at 212. But, neither are delays or alleged errors held against the government "[a]bsent carelessness or bad faith[;]" for "[n]o system of justice can be error-free, and those errors require time to fix." *Id.* (citing *Diop*, 656 F.3d at 234).

Here, Petitioner "has not requested any continuances, nor has he delayed his removal proceedings through other means." ECF No. 1, ¶ 34; ECF No. 7, p. 14. Neither are there any contentions that Respondents have, themselves, caused delays through alleged errors, let alone through carelessness or bad faith. *See* ECF No. 15, p. 3 ("The third factor—the reason for the delay—is likely neutral, as neither [Petitioner] [n]or counsel for [DHS] have sought any continuances that caused significant delay."). Petitioner does point to the delay in receiving a briefing schedule from the BIA as indicative of undue delay but nowhere attributes this delay directly to Respondents. ECF No. 1, ¶ 33 ; ECF No. 7, p. 6; ECF No. 15, p. 3. To the extent that the BIA's action or inaction may be held against Respondents, the delay experienced by Petitioner

14

here is slight compared to the delay German Santos experienced when the government allegedly "delayed the proceedings by making 'repeated legal errors'" and "moved to remand to let the Board reconsider [a specific] issue," at which time "the Board changed its mind." *German Santos*, 965 F.3d at 212 (finding that the third factor did not favor either side despite the nine-day delay caused by the petitioner and the "repeated legal errors" made by the government that prolonged proceedings). In light of this, the Court finds that the reasons for delay here are neutral and favor neither party. *See id.*

### iv.   Conditions of Confinement

When assessing the reasonableness of a petitioner's detention, "we cannot ignore the conditions of confinement." *Id.* at 212–13 (citing *Chavez-Alvarez*, 783 F.3d at 478). Here, Petitioner is detained at the MVPC—which exclusively houses alien detainees—rather than in a prison. *See Akmadjanov v. Oddo*, No. 3:25-cv-35, 2025 WL 660663, at *5 (W.D. Pa. Feb. 28, 2025) ("Respondents are correct that [MVPC] 'only houses individuals detained for immigration purposes' and that 'Petitioner is not in a prison serving a criminal punishment.'") (cleaned up); *cf. id.* ("German Santos has been detained in *prison* alongside convicted criminals since late 2017. Despite its civil label, his detention is indistinguishable from criminal punishment.") (emphasis added); *White*, 2024 WL 4164269 ("White has been confined 'alongside convicted criminals' for more than two years, in the same *prison* that caused us to conclude that a petitioner's 'detention [was] indistinguishable from criminal punishment.'") (alterations in original) (emphasis added).[7]

---

[7] While "the *physical facility* at [MVPC]… is unlikely to have changed much since it expressly was a criminal detention center[,]" *Rivas v. Oddo*, No. 3:22-cv-223, 2023 WL 4361140, at *2 (W.D. Pa. June 27, 2023) (emphasis added), those detained at MVPC after having been detained at a Federal Detention Center ("FDC") have "concede[d] that the conditions of [] confinement at MVPC are 'better than those at the [FDC].'" *Grigoryan v. Jamison*, 2025 WL 1257693, at *5 (E.D. Pa. April 30, 2025). Still, none of this assists the Court in making a particularized determination as to whether Petitioner, in the instant case, is facing "detention that is indistinguishable from criminal punishment." *German Santos*, 965 F.3d at 213.

15

Be that as it may, under *German Santos*, this Court is required to examine the factual circumstances particular to Petitioner in order to assess whether "his detention is indistinguishable from criminal punishment[,]" "[d]espite its civil label," rather than rest its determination on generalized assessments of the history of the facility in which he is housed or the experiences of a petitioner in a another case. *See* 965 F.3d at 210.

Indeed, those housed at MVPC are exclusively alien detainees, but each of those detainees, whether a convicted criminal or otherwise, is subject to a unique set of circumstances in his or her detention. For instance, Petitioner—through no request of his own—has been subjected to solitary confinement for the past four (4) months and, as part of that confinement, must remain in his cell for twenty-two (22) hours a day, *see* ECF No. 1, ¶¶ 22–24; ECF No. 7, pp. 7–9, eating, showering, using the bathroom, and sleeping in the same cell. ECF No. 1, ¶ 22.[8] While Petitioner portrays that his removal from the general population at MVPC occurred after a high-security detainee singled him out and began to threaten him, *see* ECF No. 1, ¶¶ 20–24; ECF No. 7, p. 7—potentially indicating that the segregation was for Petitioner's safety—Petitioner's Administrative Segregation Order indicates that he was placed in the SHU because *he*, Petitioner, "[i]s a security risk to him/herself or the security of the facility[.]" ECF No. 6-5. MVPC officials likewise indicated in Petitioner's subsequent Administrative Reviews that Petitioner being a security risk provided the basis for his continued segregation. *See* ECF No. 6-6. Whether Petitioner's solitary

---

[8] The Court notes that these conditions mirror some of those imposed upon individuals serving criminal sentences on death row. *See Williams v. Secretary Pennsylvania Department of Corrections*, 848 F.3d 549, 563 (3d Cir. 2017) ("Among the range of hardships we have already noted, Plaintiffs [who were placed on death row] were confined to their respective cells for twenty-two to twenty-four hours a day and ate all meals accompanied only by the emptiness within the walls of their cells."). In *Williams*, the Third Circuit explained that, on death row, "[e]ven the most basic activities of daily living, such as eating are done in utter solitude." *Id.* Even so, when determining whether conditions of isolation are typical or atypical, the Third Circuit has given great weight to the amount of time per day that a detainee is subject to confinement in his cell. *Id.* at 563–64 ("In *Shoats*, we gave great weight to the fact that the inmate was 'confined in his cell for 23 hours a day, five days a week, and 24 hours a day, two days a week… [and] eats meals by himself.'") (alterations in original) (quoting *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)).

confinement is the product of concern for his safety because of the high-security detainee's threats or a byproduct of safety risks posed by Petitioner himself, the Court has difficulty seeing how four (4) consecutive months of solitary confinement, where Petitioner is confined to the same cell for twenty-two (22) hours a day, is distinguishable from criminal punishment despite its civil label.[9] As such, the Court finds that this factor heavily favors Petitioner.

Therefore, because the duration of Petitioner's detention, the likelihood of continued detention, and the conditions of confinement all weigh in Petitioner's favor, the Court finds, based upon the specific facts of the petitioner's detention before it, that Petitioner's detention under § 1226(c) has become unreasonable.

### III.  Remedy

Petitioner has requested multiple forms of relief: (1) immediate release from custody "on his own recognizance or under parole, bond or reasonable conditions of supervision[;]" (2) alternatively, an "individualized bond hearing [before this Court] at which Respondents bear[] the burden of establishing that Petitioner poses a danger or flight risk that cannot be addressed by conditions or release;" or (3) "[a]s a final alternative… an immediate, constitutionally adequate hearing before an immigration judge, at which: (i) DHS bears the burden to demonstrate, by clear and convincing evidence, that [Petitioner]'s continued detention is necessary, and (ii) the immigration judge considers [Petitioner]'s ability to pay bond."[10] ECF No. 1, p. 15; ECF No. 6, p.

---

[9] While in the context of evaluating state prison officials' decisions, "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment[,]" *Sandin v. Conner*, 515 U.S. 472, 482 (1995), especially in the context of prison security, *see Fraise v. Terhune*, 283 F.3d 506, 516 (3d Cir. 2002), the question here is not the merit of decisions made or regulations imposed by MVPC officials but, rather, the resemblance of Petitioner's detention to criminal punishment. Four (4) months of solitary confinement where twenty-two (22) of twenty-four (24) hours are spent in the same cell is indistinguishable from criminal punishment. *See Williams*, 848 F.3d at 563 (indicating that it is not atypical for prisoners *on death row* to spend twenty-two (22) to twenty-four (24) hours a day isolated in their cell, engaging in "the most basic aspects of daily living" in "utter solitude").

[10] Petitioner additionally requested that "[w]hile his petition is pending, [he be] release[d] pursuant to the Court's inherent authority to release habeas corpus petitioners on bail." ECF No. 1, p. 15; *see also* ECF No. 7, p. 23; ECF No.

1. In short, Petitioner requests immediate release from custody, or a bond hearing before either this Court or an Immigration Judge. However, Petitioner may only appropriately be afforded a constitutionally adequate bond hearing before an Immigration Judge.

The *Davis* Court enunciated the principle well when it remarked that "[t]he only remedy for an alien challenging [his] mandatory detention is a bond hearing." *Davis v. Warden Pike County Correctional Facility*, No. 4:22-cv-20, 2022 WL 4391686, at * 4 (M.D. Pa. Aug. 18, 2022). Indeed, when the Third Circuit has been faced with the very issue before this Court—whether an alien detainee's mandatory detention under 1226(c) has become unreasonable and thus violative of the Due Process Clause—and found that the detention in question had become unreasonably prolonged, the Third Circuit has consistently required the District Court to order a bond hearing—not the detainee's release. *See German Santos*, 965 F.3d at 210, 214 ("[W]hen detention becomes unreasonable, the Due Process Clause demands *a bond hearing*.") (quoting *Diop*, 656 F.3d at 233); *White*, 2024 WL 4164269, at *2. Numerous District Courts in this Circuit have likewise followed suit and found that a bond hearing, rather than release is the appropriate remedy in such instances. *See e.g., A.L. v. Oddo,* 761 F.Supp.3d 822, 826–27 (W.D. Pa. 2025) (Haines, J.); *Shonhai v. Lowe*, No. 3:24-cv-229, 2025 WL 510975, at *7 (M.D. Pa. Feb. 14, 2025); *Abioye v. Oddo*, 704 F.Supp.3d 625, 632 (W.D. Pa. 2023); *Nyamekye v.* Oddo, No. 22-cv-240J, 2023 WL 9271844, at *5 (W.D.

---

10, p. 8 ("Generally, a district court can issue bail *prior to ruling on* a habeas petition when the petitioner establishes that exceptional circumstances exist warranting special treatment.") (citing *Lucas v. Hadden*, 790 F.2d 365, 367 (3d Cir. 1986)). Indeed, the Third Circuit in *Lucas v. Hadden* discussed "the inherent power of a federal habeas tribunal to admit a *state* petitioner to bail *pending a ruling* on the claims asserted in the petition," and sought to clarify "the standard under which a district court should evaluate a habeas petitioner's request for bail pending disposition of his petition." 790 F.2d at 367 (emphasis added). Likewise, in the context of a *federal* habeas petitioner, the Third Circuit noted that: "[w]e will grant a motion for bail *pending the disposition of federal habeas claims*...." *In re Souels*, 688 F. App'x 134, 135 (3d Cir. 2017) (quoting *Landano*, 970 F.2d at 1239) (emphasis added); *see also United States v. Santiago*, No. 19-1572, 2019 WL 11891950, at *1 (3d Cir. Aug. 1, 2019). As such, it is clear that release on bail pursuant to the *Lucas* line of cases is appropriately understood as intermediate relief that is afforded while a habeas petition is pending. As the Court here is adjudicating Petitioner's underlying Habeas Petition in addition to his request for a P.I., such relief would be inappropriate at this time.

18

Pa. Mar. 28, 2023) *R&R adopted by Nyamekye v. Oddo*, No. 3:22-cv-240, 2023 WL 9271879, at *2–3 (W.D. Pa. May 4, 2023) (Haines, J.); *Smith v. Ogle*, No. 3:21-cv-1129, 2023 WL 3369154, at *8 (M.D. Pa. Jan. 3, 2023) *R&R adopted by Smith v. Ogle*, No. 3:21-cv-1129, 2023 WL 33692597 at *5 (M.D. Pa. Jan. 3, 2023); *Malede v. Lowe*, No. 1:22-cv-1031, 2022 WL 3084304, at *7 (M.D. Pa. Aug. 3, 2022). Particularly, in such instances, "the proper remedy" is "for the court to order a bond hearing before an *immigration judge*." *Ema v. Wilkinson*, No. 1:21-cv-172, 2021 WL 3878289, at *2 n.2 (M.D. Pa. Mar. 17, 2021) (citing *German Santos*, 965 F.3d at 214; *Clarke v. Doll*, 481 F.Supp.3d 394, 398 (M.D. Pa. 202)); *see also Quinteros v. Warden Pike County Correctional Facility*, 784 F.App'x. 75, 78 (3d Cir. 2019) ("In a § 1226(c) bond hearing, *as in any other administrative hearings before an IJ* [Immigration Judge]….") (emphasis added). Therefore, the only relief that this Court may appropriately afford Petitioner at this time is a constitutionally adequate bond hearing before an Immigration Judge.

**IV.   Conclusion**

As the duration of Petitioner's detention, the likelihood of continued detention, and the conditions of confinement all weigh in Petitioner's favor, the Court finds, based upon the specific facts of the petitioner's detention before it, that Petitioner's detention under § 1226(c) has become unreasonable. "He is thus entitled to a bond hearing to gauge whether he still needs to be detained to keep him from fleeing or committing more crimes." *German Santos*, 965 F.3d at 213. "To justify [Petitioner's] continued detention," "the Government must put forth clear and convincing evidence" to "support a finding that continued detention is needed to prevent him from fleeing or harming the community[,]" *id.* at 213–14 (citing *Chavez-Alvarez*, 783 F.3d at 477–78); "[i]f it cannot, it must release him." Therefore, for the foregoing reasons, the Court will GRANT Petitioner's Habeas Petition, ECF No. 1, in so much as it requests that this Court direct that he be

afforded a constitutionally adequate bond hearing before an Immigration Judge and will DENY Petitioner's Habeas Petition, ECF No. 1, in all other respects. As such, this Court will DENY Petitioner's Motion at ECF No. 6 as moot.

This Court will direct Respondents to provide Petitioner a constitutionally adequate bond hearing before an Immigration Judge within ten (10) days of the entry of this Court's Opinion and Order. *See id.* at 214.

An appropriate Order follows.

DATED: November 7, 2025

STEPHANIE L. HAINES
U.S. DISTRICT COURT JUDGE